UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANIS BAJRASZEWSKI,

          Case No. 11-10513

    Plaintiff,          Honorable David M. Lawson

v.

ALLSTATE INSURANCE COMPANY,

    Defendant .
_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Janis Bajraszewski was injured severely in an automobile accident in 2002 and has been receiving no-fault insurance benefits from her insurer, defendant Allstate Insurance Company, since June 2004. The benefits included reimbursement for the cost of 24-hour attendant care, which mostly has been furnished by her husband and other family members. The defendant stopped paying attendant care reimbursement in August 2010, contending that it did not have the taxpayer identification numbers of the attendant care providers, which it was required to have in order to comply with federal tax reporting requirements. The plaintiff contends that Allstate has had her Social Security number and her attorney's taxpayer identification number on file for several years, and because the attendant care providers are not seeking payment directly from Allstate, the absence of the attendant care provider's taxpayer information should stand as no obstacle to reimbursement under the no-fault law. The parties were to file cross motions for summary judgment on this issue, but only the plaintiff has filed her motion. The defendant filed a response in opposition. The Court has reviewed the pleadings and motion papers and finds that the papers adequately set forth the relevant facts and law and oral argument will not aid in the disposition of the motion. Therefore,

it is **ORDERED** that the motion be decided on the papers submitted. *See* E.D. Mich. LR 7.1(f)(2). The Court also finds that where a no-fault claimant seeks reimbursement for first-party attendant care benefits, and the no-fault insurer has no actual knowledge that the claimant does not intend to comply with federal tax withholding requirements, the insurer may not refuse to pay benefits on the basis that the claimant has not furnished the care provider's taxpayer identification number. The record in this case does not support the defendant's excuse for failing to reimburse the plaintiff for the cost of the incurred attendant care, and therefore the Court will grant the plaintiff's motion for summary judgment.

I.

Under Michigan's no-fault insurance law, a person injured in an automobile accident may claim personal injury protection (PIP) benefits from her own insurer by furnishing "reasonable proof of the fact and of the amount of loss sustained." Mich. Comp. Laws § 500.3142(2). PIP benefits include the "reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation," Mich. Comp. Laws § 500.3107(1)(a), and those, in turn, may include attendant care furnished by family members, *Bonkowski v. Allstate Ins. Co.*, 281 Mich. App. 154, 164, 761 N.W.2d 784, 791 (2008) (citing *Van Marter v. American Fidelity Fire Ins. Co.*, 114 Mich. App. 171, 178-181, 318 N.W.2d 679, 681-82 (1982); *Visconti v. Detroit Auto. Inter-Ins Exch.*, 90 Mich. App. 477, 282 N.W.2d 360, 362-63 (1979).

The plaintiff was a passenger in a car that was involved in an accident on July 27, 2002 near the intersection of Thirty-two Mile Road and Wolcott Road in Macomb County, Michigan. At the time of the accident, the plaintiff was insured by Allstate in accordance with Michigan's no-fault insurance act, Mich. Comp. Laws § 500.3101 *et seq.* As a result of her injuries arising from that

accident, the plaintiff's doctor has prescribed 24-hour attendant care services. The plaintiff's husband is not employed by a home health care agency but provides the majority of the plaintiff's home care. He, along with other family members and friends, has provided the plaintiff with attendant care services 24 hours a day, 7 days a week, for several years, and particularly since July 31, 2010.

Following an arbitration agreement between the plaintiff and the defendant in June 2004, the defendant paid attendant care benefits to the plaintiff and her attorneys for over six years. However, the plaintiff alleges that beginning August 2010, the defendant stopped paying benefits and refused to reinstate them unless the plaintiff submitted the Social Security numbers of her attendant care providers. These facts are uncontested.

On December 22, 2010 the plaintiff's attorney, Sharon Milligan, spoke with the defendant's claims adjuster, Earl McClendon, to question the apparent change in the defendant's practice of paying the plaintiff's attendant care benefits. According to the plaintiff, during that conversation McClendon told Milligan that the defendant would no longer make payments using the law firm's taxpayer identification number. Instead, the defendant required either the plaintiff's or her attendant care provider's Social Security number. The defendant alleges that McClendon told Milligan that he could not issue payment without either the plaintiff's Social Security number accompanied by proof that she had issued payment and appropriate 1099 forms, or the attendant care provider's Social Security number. At Milligan's request, McClendon wrote a letter memorializing the conversation on December 28, 2010. The letter tends to support Milligan's version of the conversation; McClendon wrote that "the social security number for Janis Bajraszewski can be used

to issue[] the attendant care payment." Pl.'s Mot. for Summary J. [dkt. #15], Ex. 2, Letter from Earl McClendon.

The defendant has had the plaintiff's Social Security number on file for several years. Apparently she did not furnish her care provider's taxpayer identification information, and Allstate never reinstated the benefit payments. So the plaintiff filed her complaint and a motion to compel payment of benefits in state court on January 26, 2011. The defendant removed the case to this Court on the ground of diversity jurisdiction on February 2, 2011. On February 25, 2011, the Court denied the plaintiff's motion to compel because the motion "essentially [sought] summary judgment on the main issue in the case" . . . but "presented no authority that support[ed] the relief requested." Order Denying Pl.'s Mot. to Compel [dkt. #8]. During a Case Management Conference on March 23, 2011, the parties agreed that the matter could be decided on cross motions for summary judgment because no factual disputes existed and no discovery was required. *See* Case Management Order [dkt. #14] at 1. Thereafter, the plaintiff filed a motion for summary judgment on April 13, 2011. The defendant responded to that motion on April 27, 2011. The plaintiff replied on May 4, 2011.

II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A trial is required only when "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Where the material facts are mostly settled, and the

question before the court is purely a legal one, the summary judgment procedure is well suited for resolution of the case. *See Cincom Sys., Inc. v. Novelis Corp.*, 581 F.3d 431, 435 (6th Cir. 2009).

The defendant justifies withholding PIP payments to reimburse the plaintiff for attendant care by arguing that the plaintiff has not furnished "reasonable proof of the fact and amount of loss sustained" under section 500.3142(2) where the submission does not include the care givers' taxpayer identification number. The defendant reasons that care givers have a right under the no-fault act to demand direct payment from the insurance company for PIP benefits furnished to a covered person; the Internal Revenue Code requires third parties who make payments for such services to report the payment and furnish the recipient with a Form 1099; if the plaintiff insists on direct reimbursement, the tax code requires the insurer to have evidence that the plaintiff properly withheld taxes and furnished a 1099 to the care provider; and to the extent Michigan law is to the contrary, it is preempted by the federal tax code. The plaintiff argues that Allstate's adjuster admitted in his letter to the plaintiff's attorney that he could release payment if he had only the plaintiff's Social Security number, and the defendant therefore is estopped from taking a different position in this case.

### A.  Defendant's admissions

Whether the defendant's claims adjuster's letter amounts to a binding admission is irrelevant to the resolution of the issue at hand. The outcome of this motion does not depend on whether the defendant's claims adjuster ever told the plaintiff's attorney that the plaintiff's Social Security number was sufficient to make payments. Although there are some factual disputes surrounding those issues, those facts are not material and therefore they do not preclude summary judgment. *See* Fed. R. Civ. P. 56(a); *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001)

(stating that a fact is "material" if its resolution affects the outcome of the lawsuit). Rather, the question is whether a no-fault claimant, to obtain reimbursement for the incurred cost of PIP benefits, must furnish the taxpayer information of the care provider to satisfy the obligation to provide "reasonable proof of the fact and amount of loss sustained." That is purely a legal issue.

### B.  Direct payment to care providers

The defendant's argument is fundamentally premised on the notion that it must pay PIP payments the attendant care provider rather than the plaintiff. The plaintiff, on the other hand, insists that the right to payment of PIP benefits belongs to the injured party, not those providing the care or treatment. Neither party is entirely correct. Michigan no-fault law provides that "[p]ersonal protection insurance benefits are payable to *or* for the benefit of an injured person." Mich. Comp. Laws § 500.3112 (emphasis added). Michigan courts have determined that health care providers have an independent right of action against an insurer to enforce payment of expenses for PIP benefits. *See Lakeland Neurocare Ctrs. v. State Farm Mut. Auto. Ins. Co.*, 250 Mich. App. 35, 39-41, 645 N.W.2d 59, 61-62 (2002). In fact, "it is common practice for insurers to directly reimburse health care providers for services rendered to their insureds." *Id.* at 39 (citing *Mercy Mt. Clemens Corp. v. Auto Club Ins. Ass'n*, 219 Mich. App. 46, 48, 555 N.W.2d 871, 871-72 (1996); *McGill v. Auto. Ass'n of Mich.*, 207 Mich. App. 402, 404, 526 N.W.2d 12 (1994); *Hicks v. Citizens Ins. Co. of Am.*, 204 Mich. App. 142, 145, 514 N.W.2d 511, 513 (1994)). Those court decisions, however, also preserve the insured's right to collect PIP benefits directly and do not support the defendant's assertion that the care provider has an exclusive right to PIP benefits. *See McGill*, 207 Mich. App. at 404, 526 N.W.2d at 13; *Hicks*, 204 Mich. App. at 145, 514 N.W.2d at 513.

The Internal Revenue Code contains no requirement that payment must be made directly to the insured's care providers. To the contrary, the Internal Revenue Service has acknowledged that "[g]enerally, health, accident, and sickness insurance policies provide that the amounts payable thereunder are payable to the insured unless the insured assigns his rights to receive payments to those persons who supplied the medical services." Internal Revenue Serv., Rev. Rul. 69-595 (1969) (made obsolete with respect to other principles by Internal Revenue Service, 2002-33 I.R.B. 341 (2002)). Allstate gives no sound reason why it wants or needs to pay the plaintiff's care provider instead of the plaintiff.

The Court concludes, therefore, that under both Michigan and federal law, both the insured and her care provider may be proper payees of no-fault PIP benefits.

### C.  Federal tax reporting requirements

The Internal Revenue Code does contain language that establishes reporting requirements by those who pay compensation to others. For instance, if an insurance company elected to make payments for attendant care directly to a care provider, then it would incur a reporting obligation. "All persons engaged in a trade or business and making payment in the course of such trade or business to another person, of rent, salaries, wages, premiums, annuities, compensations . . . of $600 or more in any taxable year . . . shall render a true and accurate return to the Secretary . . . setting forth the amount of such gains, profits, and income." 26 U.S.C. § 6041(a). To comply with the requirements of section 6041(a), an insurance company must report any payments it makes directly to care providers on a Form 1099. Internal Revenue Serv., Rev. Rul. 69-595 (1969). The 1099 must include the taxpayer's tax identification or Social Security number. 2011 Instructions for Form 1099-MISC, *available at* http://www.irs.gov/pub/irs-pdf/i1099msc.pdf. If the payor has a reporting

obligation, then the payee must give the payor her taxpayer information. 26 C.F.R. § 301.6109-1(b)(1) ("A U.S. person whose [taxpayer identification] number must be included on a document filed by another person must give the taxpayer identifying number so required to the other person on request.") Therefore, a care provider that is also a payee must provide the insurance company with its taxpayer identification number upon request so that the insurance company may file the necessary returns.

However, there is no reason why an insurance company must take on this tax reporting burden in all cases because, as noted earlier, both Michigan and Federal law allow an insurance company to make payments directly to the insured. Section 6041(a) requires reporting of payments that constitute "gains, profits, and income." 26 U.S.C. § 6041(a). But the payments that an injured person "receive[s] through accident or health insurance (or through an arrangement having the effect of accident or health insurance) for personal injuries or sickness" are not included in that person's gross income. 26 U.S.C. § 104(a)(3). Therefore, when an insurance company makes payments directly to the insured person, it does not have to report those payments under 26 U.S.C. § 6041(a) because they do not constitute income. Absent a reporting obligation, the insured has no corresponding obligation to furnish taxpayer identification information.

The Internal Revenue Code does require that "every employer making payment of wages shall deduct and withhold upon such wages a tax determined in accordance with . . . procedures prescribed by the Secretary." 26 U.S.C. § 3402(a). An employer is a "person for whom an individual performs or performed any service, of whatever nature, as the employee of such person," and who controls the payment of wages to the employee. 26 U.S.C. § 3401(d). Although wages do not include "remuneration paid . . . for domestic service in a private home," 26 U.S.C. § 3401(a)(3),

if the services performed in a private home are not of a domestic nature, then the remuneration for them is not excepted. 26 C.F.R. § 31.3401(a)(3)-1(c). Compensation paid to family members is subject to income tax withholding if the services provided otherwise would constitute covered employment. *See* 26 C.F.R. § 31.3401(c)-1, (d)-1. Because attendant care is not "domestic" in nature, the insured is obligated to withhold taxes on wages paid to an attendant care provider, even if that provider is a family member rendering services in the insured's home. 26 C.F.R. § 31.3401(a)(3)-1(c).

However, when an insurance company pays benefits to the insured expressly for the purpose of the insured paying her attendant care provider, the insurance company has no reporting requirement because payments to the insured do not constitute income and the insurance company does not qualify as the care provider's employer. 26 U.S.C. § 6041; 26 U.S.C. § 104(a)(3); 26 U.S.C. § 3401(d). The insurance company could be held liable if the insured does not properly withhold taxes on her attendant care provider's wages, but only if the insurance company has "actual notice or knowledge (within the meaning of [26 U.S.C. §] 6323(i)(1)) that such employer does not intend to or will not be able to make timely payment or deposit of the amounts of tax required . . . to be deducted and withheld by such employer from such wages." 26 U.S.C. § 3505(a). But absent such actual knowledge, that potential and contingent liability does not require a PIP claimant to give the insurance company an attendant care provider's tax identification number under 26 C.F.R. § 301.6109-1(b)(1), and certainly that information would not be necessary before benefits are paid to an insured person.

### D. The plaintiff's required submissions

To recover medical expense reimbursement, a PIP claimant must prove that the charge for the medical service was reasonable, the expense was reasonably necessary for the claimant's care or treatment, and the expense was actually incurred. *Nasser v. Auto Club Ins. Ass'n*, 435 Mich. 33, 50, 457 N.W.2d 637, 645 (1990); *see also Shanafelt v. Allstate Ins. Co.*, 217 Mich. App. 625, 637, 552 N.W.2d 671, 676 (1996). To establish a right to payment, the claimant must present the insurance company with "reasonable proof of the fact and of the amount of loss sustained." Mich. Comp. Laws § 500.3142. "Reasonable proof" has never been equated with the quantum of evidence necessary to satisfy a legal claim under section 3107(1). To the contrary, section 3142(1) "requires only *reasonable* proof of the amount of loss, not exact proof." *Williams v. AAA Mich.*, 250 Mich. App. 249, 267, 646 N.W.2d 476, 485 (2002). Of course, in addition to the fact of the loss, the claimant must submit reasonable proof of the amount as well. *See Regents of Univ. of Mich. v. State Farm Mut. Ins. Co.*, 250 Mich. App. 719, 736, 650 N.W.2d 129, 138 (2002).

In must be remembered, however, that "[t]he primary goal of the [Michigan] no-fault act is 'to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses.'" *McCormick v. Carrier*, 487 Mich. 180, 234, 795 N.W.2d 517, 547 (2010) (quoting *Shavers v. Att'y Gen.*, 402 Mich. 554, 578-579, 267 N.W.2d 72, 77 (1978)). Under the Michigan no-fault system, automobile accident victims are entitled to prompt payment of certain personal injury protection benefits as soon as "the loss accrues." Mich. Comp. Laws § 500.3142(1). "[T]he no-fault act may not be used by a no-fault insurer . . . as a weapon against rightful payees to

a payee's unjustified economic detriment." *Lakeland Neurocare Ctrs.*, 250 Mich. App. at 43, 645 N.W.2d at 64.

As part of showing "reasonable proof of the fact and of the amount of loss sustained," the Michigan Supreme Court requires that an insured establish that it has incurred costs by showing "a legal or equitable obligation to pay." *Burris v. Allstate Ins. Co.*, 480 Mich. 1081, 1084, 745 N.W.2d 101, 104 (2008) (Corrigan, J., concurring). An insured may demonstrate such an obligation by showing it paid for costs out of pocket, signed a contract for products or services, or has some other obligation to pay for attendant care services. *Ibid.* (citing *Proudfoot v. State Farm Mut. Ins. Co.*, 469 Mich. App. 476, 484, 673 N.W.2d 739, 744 (2003)). "Should the insured present a contract for products or services rather than a paid bill, the insurance company may, in order to protect itself, make its check payable to the insured and the contractor." *Proudfoot*, 469 Mich. App. at 484 n.4, 673 N.W.2d at 744 n.4.

Because family members that provide attendant care services should be treated the same as attendant care service workers, "the insured's family members and friends, just like any other provider, must perform the services with a reasonable expectation of payment." *Id.* at 1085. When an insured's care providers cannot produce a record of their service, have not submitted a claim for compensation, and clearly state they did not expect payment, then the insured has not incurred any expense for its attendant care. *Id.* at 1082. However, to show reasonable proof of the amount of loss, Michigan courts have required only that the claimant submit "a letter and a statement" detailing expenses. *See Williams*, 250 Mich. App. at 267, 646 N.W.2d at 485; *Regents of the Univ. of Mich.*, 250 Mich. App. at 737, 650 N.W.2d at 139. Therefore, the care provider's affidavits and the plaintiff's bills constitute reasonable proof of the fact and amount of loss the plaintiff sustained.

Because the plaintiff has established that she is a rightful payee of PIP benefits, the defendant must pay those benefits without unreasonable delay. *Lakeland Neurocare Ctrs.*, 250 Mich. App. at 43, 645 N.W.2d at 64.

When reasonable proof of the loss and the amount of the claimed benefit has been received, the insurance company has a duty to investigate on its own if it wishes to challenge the amount of benefits owed. *Williams*, 250 Mich. App. at 267, 646 N.W.2d at 485 (stating that if the insurance company, after receiving notification of the amount of loss, "had desired to challenge or investigate the amount [claimed], could have and should have conducted some investigation of its own during the thirty-day legislative grace period to establish a lesser amount of uncoordinated benefits owed").

As noted above, the defendant could be liable for withholding taxes if it knows that the plaintiff does not intend to withhold taxes from the care provider's wages. But there is no evidence in the present record that the plaintiff has any intention to evade her tax responsibilities, much less knowledge of that possibility by Allstate. Even if the defendant did somehow incur this liability, it would not require the care provider's tax identification number. *See* 26 U.S.C. § 3505. Therefore, the defendant's allegation that it requires the defendant's tax identification number before it can make PIP benefit payments in compliance with the Internal Revenue Code is unfounded.

### III.

The parties have not disputed the fact that — except for taxpayer identification information — the plaintiff has submitted reasonable proof of the fact and amount of the attendant care expense incurred by the plaintiff since August 1, 2010. Because taxpayer identification information for the attendant care providers is not part of the information that constitutes such "reasonable proof," the defendant's failure to pay PIP benefits on time was not reasonable. Therefore, the plaintiff is

entitled to a judgment as a matter of law. However, the record does not contain information on the amount of damages, such as the cost of attendant care expenses incurred through the present date, whether there is a claim for penalty interest under Mich. Comp. Laws § 500.3142, and whether attorney's fees are sought under Mich. Comp. Laws § 500.3148(1). Therefore, the Court will direct the plaintiff to file proof of the PIP costs submitted to Allstate and the amount of penalty interest, if any, claimed. If the plaintiff seeks attorney's fees, she may do so after judgment is entered under Federal Rule of Civil Procedure 54(d)(2) and Local Rule 54.1.

Accordingly, it is **ORDERED** that the plaintiff's motion for summary judgment [dkt. #15] is **GRANTED**.

It is further **ORDERED** that **on or before November 3, 2011**, the plaintiff must file proof of the attendant care costs submitted to Allstate and the amount of penalty interest, if any, claimed. If the defendant contests the amounts, it must file detailed objections **on or before November 10, 2011**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: October 20, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 20, 2011.

s/Deborah R. Tofil
DEBORAH R. TOFIL